SMITH v. STATE OF INDIANA.

SMITH ET AL. v. STATE OF INDIANA.

[Nos. 24,912, 24,913.   Filed January 8, 1926.]

1. EXPLOSIVES.—*Charge of carrying nitroglycerine held not to show violation of statute prohibiting carrying "cartridge, shell or bomb containing dynamite."*—An affidavit charging defendants with carrying "a certain quantity of nitroglycerine and cartridges, commonly known as dynamite caps" does not charge the violation of §3004 Burns 1926, §2697 Burns 1914, making it a criminal offense to carry concealed on or about his person or to place on the premises of another "any cartridge, shell or bomb containing dynamite or other nitroexplosive compound." p. 191.

2. EXPLOSIVES.—*Charge of carrying or depositing, "dynamite caps" held not to show violation of statute prohibiting carrying or depositing cartridges, shells or bombs containing dynamite, as "dynamite caps" contain no dynamite.*—An affidavit charging defendants with carrying and depositing on the premises of another "dynamite caps" does not charge a violation of §3004 Burns 1926, §2697 Burns 1914, prohibiting the carrying or depositing on the premises of another of any "cartridge, shell or bomb containing dynamite or other nitroexplosive compound," as so-called "dynamite caps" do not contain any dynamite or other nitroexplosive compound. p. 191.

From Marion Criminal Court (56,866); *W. W. Thornton* and *J. W. Holtzman*, Special Judges.

Alfred L. Smith and others were separately convicted of violating the statute regulating the manufacture, sale and use of dynamite, and they appeal. *Reversed.*

*Holmes & McCallister*, for appellants.

*Arthur L. Gilliom*, Attorney-General and *Fred C. Gause*, for the State.

EWBANK, C. J.—The three appellants were jointly charged by affidavit with the same offense, but were tried separately. Each was found guilty, and each was sentenced to imprisonment for not less than two nor more than fourteen years. Overruling the motion made

separately and severally by the three defendants to quash the affidavit is the only error assigned.

The affidavit, besides averring that the defendants were in the custody of the sheriff and that the grand jury was not in session, alleged that at a time and place named the three defendants did "unlawfully and feloniously carry concealed on or about their person in a certain suitcase, grip and chest a certain quantity of nitroglycerine and cartridges commonly known as dynamite caps, for other than legitimate and lawful use and did then and there place and deposit the same upon the premises of another, to wit, Frank C. Kokemiller, without the consent of the said Frank C. Kokemiller, contrary," etc. The motion to quash was for the alleged reasons: (1) That the affidavit does not state facts sufficient to constitute a public offense; and (2) does not state the offense with sufficient certainty.

The statute charged to have been violated is entitled, "An act to regulate the manufacture, sale and use of dynamite within the State of Indiana," and provides that, "Whoever carries concealed on or about his person any cartridge, shell or bomb containing dynamite or other nitro-explosive compound for any other than legitimate and lawful use or uses, or attempts to use the same in any manner to the injury of persons or property, or shall place or deposit the same upon or about the premises of another without the consent of such person, shall, upon conviction thereof, be imprisoned in the penitentiary not less than two years nor more than fourteen years." §3004 Burns 1926, §2697 Burns 1914, §4, ch. 140, Acts 1889 p. 279 (280).

Appellants point out that the affidavit does not charge them with having carried concealed on or about their persons, or placed upon or about the premises of Kokemiller, "any * * * shell or bomb" whatever, whether "containing dynamite" or not; but only alleges

that they so carried "a certain quantity of nitroglycerine and cartridges commonly known as dynamite caps," not alleged to have been contained in anything except "a certain suit case, grip and chest." And that nothing whatever is alleged as to what the "cartridges" contained, except what may be implied from the fact that they were known as "dynamite caps."

It is clear that an act to regulate the use of "dynamite" which makes it a public offense to carry concealed or to place on the premises of another "any cartridge, shell or bomb containing dynamite" is not shown to have been violated by alleging that the defendants carried "a certain quantity of nitroglycerine" in a "suit case, grip and chest." Nitroglycerine is an ingredient of dynamite, and would form part of "any cartridge, shell or bomb containing dynamite," etc., which it is made unlawful to carry concealed on or about one's person, or to place upon or about the premises of another not consenting thereto. But the charge that defendants carried or deposited, in a suit case, one of the ingredients from which a dynamite bomb might be made is not a sufficient charge that they carried or deposited a dynamite bomb; and the allegation that they so carried and deposited nitroglycerine does not charge a public offense.

As to the further charge that defendants so carried and deposited on the premises of another "dynamite caps," we learn from authorities on that subject that dynamite caps are small tubes of copper, open at one end, partly filled with a composition of which the principal ingredient is fulminate of mercury, that will explode when touched by flame from a burning fuse or charge of electricity. And that they are used as "detonators" to explode nitroglycerine, dynamite, and explosives of like character, but do not contain any dynamite or other nitroexplosive compound

whatever. U. S. Bureau of Mines, Bul. No. 57, p. 159 (1914), No. 59, p. 5 (1913), and No. 125, p. 7 (1916). "Among the more important factors involved in the use of high explosives in blasting operations is the means employed to bring about the detonation of the charge. When flame is applied to high explosives many of them may burn if not confined; but all of them when burning under certain conditions of confinement may detonate. * * * When nitroglycerine was first used it was fired by the application of flame, but considerable difficulty was experienced in exploding it with certainty and in obtaining uniform results. In 1864 Alfred Noble, a Swedish engineer, discovered that nitroglycerine could be surely and completely detonated by exploding in contact with it a small quantity of an initiatory explosive. Mercury fulminate was the substance then found capable of producing the best results. There are many other fulminates and other substances that will produce complete detonation of commercial 'high' explosives, but detonators or electric detonators containing mercury fulminate as the characteristic ingredient are still almost exclusively used in this country. The term 'detonator' is used in the publications of the Bureau of Mines to designate what the miner calls a 'blasting cap'—a copper capsule containing a small quantity of some detonating compound that is ignited by a fuse." U. S. Bureau of Mines Bul. No. 59 (1913) p. 5. Allegations that defendants carried concealed and deposited on the premises of another caps of this character do not sufficiently charge a violation of the statute which forbids such carrying or depositing of "any cartridge, shell or bomb containing dynamite or other nitro-explosive compound."

Each judgment is reversed, with directions to sustain the motion of each defendant to quash the affidavit.

It appearing that the defendant—is now confined in

the Indiana State Prison, the clerk will make the proper order that he be returned to the custody of the sheriff of Marion county.