# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2019, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Wharton, | May 30, 2019 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 18A-CR-2824 |
| v. | Appeal from the Vanderburgh Circuit Court |
| State of Indiana, | The Honorable Leslie Shively, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 82D03-1805-F5-3642 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Corey Wharton (Wharton), appeals his conviction for Count I, carrying a handgun without a license with a prior felony, a Level 5 felony, Ind. Code § 35-47-2-1(e); Count II, possession of methamphetamine, a Level 5 felony, I.C. § 35-48-4-6.1(b); Count III, operating a motor vehicle after forfeiture of license for life, a Level 5 felony, I.C. § 9-30-10-17(a)(1); Count IV, resisting law enforcement, a Level 6 felony, I.C. § 35-44.1-3-1(b); and Count V, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(1).

[2] We affirm in part, reverse in part, and remand with instructions.

## ISSUES

[3] Wharton presents two issues on appeal, which we restate as:

(1) Whether the trial court's comments that Wharton had prior felony convictions during the first phase of his bifurcated trial constituted a fundamental error; and

(2) Whether Wharton's convictions for two Counts of resisting law enforcement violated the prohibition against Double Jeopardy under the Indiana Constitution.

## FACTS AND PROCEDURAL HISTORY

[4] On May 21, 2018, Officer Kenny Dutschke (Officer Duschke) and Officer Justin Jackson (Officer Jackson) of the Evansville Police Department were investigating a shooting that had occurred the previous day. The officers were

searching for a maroon four-door vehicle allegedly involved in the shooting incident. At the intersection of Monroe and Garvin Streets, the officers saw a vehicle matching the description. Wharton was driving the vehicle. The officers, who were in a fully marked police vehicle, activated their emergency lights and initiated a traffic stop. Wharton did not stop his vehicle, but instead slowed down at first and then accelerated. Wharton stopped his vehicle about a block away and then fled on foot. Officer Dutschke pursued Wharton on foot while Officer Jackson remained behind trying to keep Wharton's vehicle from striking his own, since Wharton had left his vehicle in reverse gear. While chasing Wharton, Officer Dutschke repeatedly ordered Wharton to stop, but Wharton kept running. Officer Dutschke had to use his taser to stop Wharton from running. After securing Wharton, the officers searched Wharton's person and located a white crystalline substance which was later determined to be 2.62 grams of methamphetamine.

[5] On May 23, 2018, the State filed an Information, charging Wharton with Count I, carrying a handgun without a license with a prior felony, a Level 5 felony; Count II, possession of methamphetamine, a Level 5 felony; Count III, operating a motor vehicle after forfeiture of license for life, a Level 5 felony; Count IV, resisting law enforcement, a Level 6 felony; and Count V, resisting law enforcement, a Class A misdemeanor. The State also filed a habitual offender enhancement charge, claiming that Wharton had accumulated at least three prior unrelated felony convictions.

[6]     On June 19, 2018, Wharton requested permission to represent himself. After being advised, his request was granted. A public defender was appointed as stand-by counsel on June 20, 2018. At the start of his jury trial on September 26, 2018, the trial court conducted a pre-trial hearing. Wharton appeared via video from Vanderburgh County Jail and stated that he would not be attending his trial. Also, Wharton fired his standby counsel, claiming that she was "ineffective." (Transcript Vol. II, p. 90). After the pretrial hearing concluded, the trial court proceeded with Wharton's bifurcated jury trial. Wharton was tried in absentia; however, his standby counsel remained seated at the table. At the end of the first phase of Wharton's trial, the jury found Wharton guilty as charged. During the second phase of Wharton's trial, the jury adjudicated Wharton as an habitual offender.

[7]     On October 26, 2018, the trial court conducted a sentencing hearing. After the trial court read the cause number to this case, Wharton immediately objected and stated, "I'm not here to be adjudicated upon. I'm just here on a special appearance today. Not a general appearance." (Tr. Vol. II, p. 210). The trial court warned Wharton not to interrupt when it was talking, or it would conduct the hearing in his absence. Wharton again interrupted the trial court and stated, "I'm a Moorish national. And this Court is runnin' a defacto [sic] status right now as we speak . . . I ask that you [,] I demand you release the restraints and produce the body via habeas corpus of Corey Warton-el." (Tr. Vol. II, pp. 210, 212). The trial court gave a further warning, but Wharton continued, "Although you sit (indiscernible) King Soloman [sic] you can't judge me as

Soloman [sic].  I am Soloman [sic]." (Tr. Vol. II, p. 212).  At that point, the trial court ordered Wharton to be removed from the courtroom.  After considering the presentencing report and the evidence presented, the trial court sentenced Wharton as follows:  Six years on Count I, enhanced by six years due to Wharton's status as an habitual offender; two and one-half years on Counts II and IV; six years on Count II; and one year on Count V.  Wharton's sentences were to run concurrently, for an aggregate sentence of twelve years.

[8] Wharton now appeals.  Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Trial Court's Comments*

[9] Wharton argues error occurred when the trial court stated during the *voir dire* process that he had a prior felony conviction.  Wharton acknowledges in his brief that he did not object at trial to any of the references he now alleges to be error because he was absent at his trial.  Generally, the failure to object at trial results in a waiver of the issue on appeal.  *Bayes v. State*, 779 N.E.2d 77, 81 (Ind. Ct. App. 2002), *trans. denied*.  "A contemporaneous objection affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced."  *Id.*

[10] Wharton nevertheless seeks to escape waiver by arguing that the references constitute fundamental error.  The fundamental error exception to the waiver rule regarding contemporaneous objections is an extremely narrow one.  *Id.* The doctrine is "available only when the record reveals a clearly blatant

violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[11] As a person accused of a criminal offense, Wharton had a constitutional due process right to a fair trial. *See* U.S. CONST. Amends. V, XIV; Ind. Const. Art. 1, §§ 12, 13. Due process constitutionally clothed Wharton with a presumption of innocence. *See Estelle v. Williams*, 425 U.S. 501, 503 (1976). Further, we note that one purpose of bifurcation is to keep prior offenses away from the jury during the phase of determining guilt for the crimes charged. *Russell v. State*, 997 N.E.2d 351, 354 (Ind. 2013). Evidence of prior convictions is generally inadmissible because such evidence "'has no tendency to establish the guilt or innocence of the accused.'" *Spearman v. State*, 744 N.E.2d 545, 547 (Ind. Ct. App. 2001) (quoting *Lawrence v. State*, 259 Ind. 306, 310, 286 N.E.2d 830, 832 (1972)).

[12] Wharton argues that because the jury was made aware that he had a prior felony during *voir dire*, he was denied the presumption of innocence and due process of law. He continues that while "the trial court did bifurcate the proceedings and tried the habitual offender [] enhancement[] in a second phase of the trial[,] [d]espite the bifurcation, the trial court told the jury the defendant had a prior felony conviction on three separate occasions during the *voir dire* process." (Appellant's Br. p. 13).

[13]    Turning to the record, at the beginning of the *voir dire* process and while addressing the jury pool, the trial court stated,

> As I said, this is a criminal case and the charges that are pending against Mr. Wharton that you will be considering today are carrying a handgun [] with a prior [f]elony conviction, possession of methamphetamine, operating a motor vehicle after forfeiture of license, resisting law enforcement, and related charges thereto. Now because this is in fact a criminal trial [Wharton] is presumed to be innocent of the charges that have been brought against him. The [s]tate of Indiana has the burden of overcoming this presumption of innocence and proving . . . [Wharton's] guilt of all of these crimes beyond a reasonable doubt. I will discuss these contents with you at a greater length later in these proceedings.

(Tr. Vol. II, p. 96). When the trial court asked a prospective juror if there was "anything about the charges in [Wharton's] case that would cause" her "to be unable to listen to the evidence in this case and render a verdict solely" based on the evidence, the following exchange occurred,

> [Prospective Juror]: I do have a problem if the particular person is a repeat offender. I don't see the burden of proof should be on the State to do that. But that's my own opinion. Because the fact is, is if he basically has already [] had a record, and he's repeating these (indiscernible).

> [Trial Court]: Well you really don't know that yet. The way our system constitutionally works, even if using your hypothetical, someone has been charged and found guilty sometime back of a crime, we're not here about that crime. We're here about new charges. And the way our system works, the State still has to prove all the elements of those new charges. We don't simply

operate and say this person was convicted before therefore they must be guilty. We don't work that way. We ignore all that and start fresh. Given that explanation can you do that?

> [Prospective Juror]: Sure . . . .

(Tr. Vol. II, pp. 99-100). Then during the second round of the *voir dire* process, the trial court had the following dialogue with a prospective juror:

> [Trial Court]: The nature of the charges in this case, which I went through generally, possession of meth, possession of a handgun by a convicted felon, and the moving violations, resisting arrest, etcetera. Anything about those charges that bother you that would make it difficult for you to view the evidence presented objectively?
>
> [Prospective Juror]: No.

(Tr. Vol. II, pp. 103-04). Lastly, while questioning another prospective juror, the following exchange occurred

> [Trial Court]: Given the nature of some of the charges in this case, possession of meth, possession of a firearm by convicted felon, resisting law enforcement, anything about those charges that bother you that would cause you to be less than objective in considering the evidence?

(Tr. Vol. II, pp. 105-06).[1]

[14] Here, the trial court simply recited the charges against Wharton and nothing more, and we note that the underlying facts relating to Wharton's prior conviction which elevated the possession of a handgun without a license to a Level 5 felony, were not made known to the potential jurors. Moreover, the trial court's multiple references that Wharton had a prior felony were accompanied with statements that sufficiently minimized any prejudicial effect. The trial court attempted to explain to the prospective juror who had a concern regarding Wharton's prior felony conviction, indicating that the prior conviction could not determine if Wharton was guilty of the instant offenses; rather the burden was on the State to prove all the offenses beyond a reasonable doubt.

[15] The trial court's reading of the possession of handgun without a license charge with a prior felony, as enhanced, was information related to the charge, but the enhancement still had to be proven, and was proven during the second phase of Wharton's bifurcated trial. Thus, the trial court's comments during *voir dire* did

---

[1] The prospective juror claimed that she did not agree with the "methamphetamine part" because she had an "ex-husband" who was a user. (Tr. Vol. II, p. 106). After the trial court clarified that it was not seeking to delve into the issues of her former marriage and was only seeking her objectivity in considering the evidence presented, it proceeded in asking her further questions.

not give rise to an undeniable or substantial potential for harm, did not constitute a clearly blatant violation of elementary principles of due process, and did not render a fair trial impossible. In light of these isolated references to Wharton's status based on past convictions during *voir dire*, and our Supreme Court's narrow definition of fundamental error, we hold that the prejudice did not constitute fundamental error. *See Bayes*, 779 N.E.2d at 81 (where we determined that the trial court's and prosecution's repeated reference to the defendant's status as a serious violent felon during *voir dire* did not constitute fundamental error.)

## II. *Double Jeopardy*

[16]     Wharton claims that his two convictions for resisting law enforcement, one as a Level 6 felony and one as a Class A misdemeanor, violate the Double Jeopardy Clause under the Indiana Constitution.

[17]     Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The Indiana Supreme Court has determined that two or more offenses constitute the same offense for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Frazier v. State*, 988 N.E.2d 1257, 1262 (Ind. Ct. App. 2013) (citing *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). Whether convictions violate double jeopardy is a question of law which we review *de novo*." *Id*. *Vermillion v. State*, 978 N.E.2d 459, 464 (Ind. Ct. App. 2012).

[18]     In support of his double jeopardy claim, Wharton relies on *Paquette v. State*, 101 N.E.3d 234, 237 (Ind. 2018). In *Paquette*, our Supreme Court found that only one Level 3 felony conviction is authorized under Indiana Code section 35-44.1-3-1 when a defendant engages in a single act of resisting law enforcement while operating a vehicle that causes multiple deaths.

[19]     The defendant in *Paquette* used a vehicle to flee from law enforcement, and the pursuit ended in a crash involving innocent motorists. The defendant faced multiple Level 3 felony resisting law enforcement charges stemming from a single act of resisting. We find that any double jeopardy concerns may not be fully resolved by *Paquette*. Rather, we believe that the issue presented here is whether Wharton's resisting law enforcement offenses violate the continuous crime doctrine, which reflects another category of Indiana's prohibition against double jeopardy.

[20]     The continuous crime doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime and prevents the State from charging a defendant twice for the same continuous offense. *Koch v. State*, 952 N.E.2d 359, 373 (Ind. Ct. App. 2011), *trans. denied*. The doctrine "essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* (citation omitted). The doctrine applies in those situations where a defendant is charged multiple times with the same offense. *Id.* The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two

distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. *Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015). The continuous crime doctrine requires a fact-sensitive analysis. *Chavez v. State*, 988 N.E.2d 1226, 1229 (Ind. Ct. App. 2013), *trans. denied.*

[21] A person commits the offense of Class A misdemeanor resisting law enforcement by fleeing from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop. I.C. § 35-44.1-3-1(a)(3). The offense is a Level 6 felony if the person "uses a vehicle to commit the offense." I.C. § 35-44.1-3-1(b)(1)(A).

[22] This Court has held in several cases that a defendant cannot be convicted of both misdemeanor and felony resisting law enforcement when he or she flees in a vehicle, gets out, and immediately flees on foot. *See, e.g., Lewis v. State*, 43 N.E.3d 689, 691 (Ind. Ct. App. 2015); *Nevel v. State*, 818 N.E.2d 1, 5 (Ind. Ct. App. 2004). In both of these cases, the defendant fled from the police in a vehicle, got out of the vehicle, and continued to flee from the police on foot. He was charged and convicted of both misdemeanor and felony resisting law enforcement, and this Court vacated the misdemeanor resisting convictions. *Lewis*, 43 N.E.3d at 691; *Nevel*, 818 N.E.2d at 5.

[23] The instant case is in line with the above cited cases. Wharton's actions of fleeing by vehicle and then on foot constitute one continuous act of resisting law enforcement, and we hold that convictions on both Counts cannot stand.

*See Lewis*, 43 N.E.3d at 691; *Nevel*, 818 N.E.2d at 5. Our holdings are also consistent with our Supreme Court's decision in *Hines*, 30 N.E.3d at 1220, where the court clarified that the continuous crime doctrine applies "only where a defendant has been charged multiple times with the same 'continuous' offense." Our Supreme Court further explained that "[t]he Legislature, not this Court, defines when a criminal offense is continuous, *e.g.* not terminated by a single act or fact but subsisting for a definite period and covering successive, similar occurrences." *Id*. at 1219. We remand this case to the trial court with instructions to vacate Wharton's conviction for Class A misdemeanor resisting law enforcement and to amend the abstract of judgment, chronological case summary, and any other relevant court documents to reflect the vacated Class A misdemeanor conviction.

## CONCLUSION

[24] Based on the foregoing, we conclude that the trial court's repeated reference to the fact that Wharton had a prior felony conviction during *voir dire* did not constitute fundamental error. However, we remand this case to the trial court with instructions to vacate Wharton's conviction for Class A misdemeanor resisting law enforcement.

[25] Affirmed in part, reversed in part, and remanded with instructions.

[26] Bailey, J. and Pyle, J. concur